CALOGERO, Justice.
The Louisiana Consumer Credit Law[1] permits licensed lenders[2] and supervised financial organizations[3] to engage in the *1074 business of making loans with interest rate ceilings greater than the twelve percent maximum otherwise allowed by law,[4] and more specifically to charge interest from 21% to 36% depending upon the amount of the loan.[5]
One provision of that statute, La.R.S. 9:3514, has been interpreted by the court of appeal in this case to permit a lender, who is not a licensed lender nor a supervised financial organization, to charge and collect these interest rates (higher than twelve percent) on a non-consumer loan where the borrower and lender have agreed by written declaration in the promissory note to have the loan subject to the Louisiana Consumer Credit Law.
We granted writs on application of the borrower who objects to this statutory interpretation and who seeks to recover from the defendant interest paid, penalties and attorney's fees.[6]
For the reasons which follow we determine that La.R.S. 9:3514, properly interpreted and applied, does not permit an unlicensed lender who is also not a supervised financial organization, in a non-consumer transaction (nor in a consumer transaction, for that matter), to charge the higher interest rates allowed by the Louisiana Consumer Credit Law. Accordingly, we will reverse the judgment of the court of appeal and reinstate the judgment of the district court.
The pertinent facts of this case as stipulated by the parties at trial are stated in the First Circuit Court of Appeal opinion as follows:
Both parties stipulated that on September 23, 1981, the plaintiffs, James H. Floyd, Sr. and Verna Johnson Floyd, executed a promissory note and a mortgage on their home and other real estate, in favor of the defendant, Baton Rouge Sash & Door Company, Inc., for $29,-811.00, with interest at the rate of 21% per annum. The plaintiffs and the defendant agreed by written declaration in the promissory note that the loan transaction would be subject to the provisions of the Louisiana Consumer Credit Law, LSA-R.S. 9:3510 et seq., and would be considered to be a “consumer loan” as defined in LSA-R.S. 9:3516(14). Both parties also stipulated that the defendant is not a “licensed lender” or a “supervised financial organization” as contemplated by LSA-R.S. 9:3516(20) and (27).
491 So.2d 679, 688 (La.App. 1st Cir.1986)
The trial court found that since the defendant, an architectural millworlc company, was neither a “licensed lender” nor a “supervised financial organization,” the defendant had violated La.R.S. 9:3557[7] by *1075 making a “supervised loan”[8] to the plaintiffs. Accordingly, the trial judge rendered judgment in favor of plaintiff for an amount equal to the entire amount of interest which he had paid[9] but refused to award attorney’s fees or penalties, finding that the defendant had not acted in bad faith.[10]
On appeal to the court of appeal, the defendant argued that, pursuant to La.R.S. 9:3514, a borrower, and a lender who is neither a “licensed lender” nor a “supervised financial organization,” may by contract agree that the loan will be subject to the Louisiana Consumer Credit Law and its more liberal interest rate provisions. La. R.S. 9:3514 states:
This law does not displace legal limitations upon the powers of credit unions, savings banks, savings and loan associations, or other thrift institutions whether organized for the profit of shareholders or as mutual organizations; but the parties to a transaction other than a consumer credit transaction, whether any of such parties is such a thrift institution or not, and whether such transaction is specifically excluded from the provisions of this law by Section 3512 hereof, except retail installment transactions made pursuant to the Motor Vehicle Sales Finance Act, or any other provisions of law, may contract with one another that such transaction shall be subject to the provisions of this law, in which event the transaction shall be a consumer credit transaction within the provisions of this law, notwithstanding any other provisions of law to the contrary, (emphasis supplied)
Reversing the trial court, the court of appeal held that the defendant was entitled to charge the more liberal interest allowed by the Louisiana Consumer Credit Law, despite La.R.S. 9:3557’s only allowing licensed lenders or supervised financial organizations to engage in the business of making supervised loans.
Normally a lender is limited to charging an interest rate not in excess of twelve percent per annum.[11] In this case, the court of appeal permitted the lender to charge twenty-one percent per annum, a rate authorized by La.R.S. 9:3519. However, that statute clearly addresses interest rates which may be charged by 1) a licensed lender or 2) a supervised financial organization. The defendant is neither.
La.R.S. 9:3557 also prohibits a lender from engaging in the business of making supervised loans unless such lender is a licensed lender or a supervised financial organization. Whether the defendant can be said to have been in the business of making supervised loans on the basis of this single loan is problematic, at the very least.[12] But in all events La.R.S. 9:3519(A) very clearly states that the lender who may take advantage of the higher interest rates of the Louisiana Consumer Credit Law are those who are licensed lenders or supervised financial organizations.
The problem in this case arises because, at least arguably, La.R.S. 9:3514 can be interpreted (and the court of appeal did so interpret it) as allowing parties, including an unlicensed lender, who simply agree to be governed by the provisions of the Louisiana Consumer Credit Law, to agree to interest rates in excess of twelve percent, if it is a non-consumer loan. That inter *1076 pretation, while seemingly incongruous, does at least seem to have support in the language of the statute. (“[T]he parties to a transaction other than a consumer credit transaction ... whether such transaction is specifically excluded from the provision of the law by Section 3512 hereof ... or any other provision of law, may contract with one another that such transaction shall be subject to the provisions of this law, in which event the transaction shall be a consumer credit transaction within the provisions of the law, notwithstanding any other provision of law to the contrary.”) However, this interpretation presupposes that “the parties to a transaction” means any parties, including unlicensed lenders.[13] Consequently, it is not unfair to characterize the present law as ambiguous, even though La.R.S. 9:3519 specifically authorizes only licensed lenders or supervised financial organizations to charge interest rates in excess of twelve percent.
The court of appeal’s interpretation of La.R.S. 9:3514, however, leads to an anamolous result. The Louisiana Consumer Credit Law was set up to regulate consumer credit transactions. The higher interest allowed by the law was specified in order to encourage lenders to make consumer loans. Yet, according to the court of appeal, all that is necessary for a lender to take advantage of these higher rates are: that the parties agree in writing that “such a transaction shall be subject to the provision of this lav/’ and that the transaction not be a consumer credit transaction; that the lender need not be licensed or a supervised financial organization. Under that interpretation, a lender not ordinarily able to make the higher interest loans can do so under the statute if the transaction is not a consumer credit transaction. If the transaction is a consumer credit transaction, the same unlicensed lender can not make the higher interest loans. It does not seem likely that the Legislature intended to give unlicensed lenders on non-consumer credit transactions the benefit of the higher interest rates and not give the same benefit to such unlicensed lenders on consumer credit transactions, a result inimical to, rather than supportive of the law’s purpose, which was to encourage consumer transactions. Our conclusion is that the statute does not allow an unlicensed lender to make the higher interest loans, whether they are consumer or non-consumer transactions.
The Uniform Consumer Credit Code [hereinafter cited as U.C.C.C.] has two provisions similar to La.R.S. 9:3514.[14] Under the U.C.C.C. like the Louisiana law, the consumer purpose test is the basic standard for determining coverage.[15] Because a purpose test may be difficult for a licensed lender or seller to apply, such lender would run a substantial risk when making a supervised loan, since whether a given loan and its higher interest rate are permissible depends upon whether the debtor’s purpose is personal or business. The personal loan is a consumer credit loan, the business loan is not. The drafters of the U.C.C.C. reasoned that if a creditor is willing to subject himself to all of the restrictions of the law (by becoming licensed, etc., is how we read it),[16] there is no *1077 good reason why he should not be able to make the same charges to any borrower as he may to one who transacts for a consumer purpose. In the process, this problem of later attack on the grounds that the loan was for business rather than personal reasons is obviated.[17]
Thus the purpose behind La.R.S. 9:3514 was not to enable unlicensed lenders to circumvent the usury laws, but rather to allow parties to a loan transaction, one of whom is a licensed lender or a supervised financial organization, to agree that the transaction “shall be subject to the provisions of this [the Louisiana Consumer Credit] law,” regardless of the transaction’s purpose. One such governing provision is La.R.S. 9:3519, which allows lenders to charge interest rates in excess of twelve percent (provided the lenders are either licensed lenders or supervised financial organizations).
It is our conclusion that La.R.S. 9:3514, although possibly ambiguous, was never intended to allow a lender who is neither licensed nor a supervised financial organization to circumvent the applicable usury laws. Other provisions of the Louisiana law are sufficiently specific, and they authorize only licensed lenders and supervised financial organizations to charge interest rates greater than twelve percent per annum. Otherwise, La.Civ.Code art. 2924 and La.R.S. 9:3503 set a twelve percent maximum interest rate on loans generally.
Defendant has called to our attention the fact that in 1986 the Legislature amended La.R.S. 9:3514.[18] That amendment purportedly allows an unlicensed lender like the defendant, in a non-consumer transaction, and by agreement with the borrower, to charge the higher interest rate in no more than four transactions annually. Defendant suggests that this 1986 amendment indicates that the Legislature before 1986 had contemplated the availability of the higher interest loans to the unlicensed lender without limit as to their frequency. We do not agree. Whatever the reason which prompted the Legislature in 1986 to amend R.S. 9:3514, it is the responsibility of this Court to interpret and apply the statute as it existed before 1986 and at the time relevant to this case. That interpretation and application is set forth above.
The plaintiff argues that the defendant acted in bad faith when it violated the Louisiana Consumer Credit Law and therefore plaintiff should be entitled to an award of statutory penalties and attorney’s fees. We believe that the trial court was correct in finding that the defendant did not act in bad faith and, consequently, award of penalties and attorney’s fees is appropriately denied in this case.

*1078
Decree

For the foregoing reasons, the court of appeal decision is reversed and the judgment of the trial court is reinstated.
REVERSED.
DIXON, C.J., respectfully dissents.

. La.R.S. 9:3510 et seq. (West 1983 & Supp. 1987).

. La.R.S. 9:3516(20) provides:
‘Licensed lender” means a person, other than a supervised financial organization, engaged in the business of making supervised loans.

.La.R.S. 9:3516(27) provides:
"Supervised financial organization" is a banking or similar organization organized, certified, and supervised by an agency of either the United States of America or the State of Louisiana pursuant to the banking, currency, and related laws of the United States of America or of the State of Louisiana; or an organization which is an approved lender under *1074 the rules and regulations of the Federal Housing Administration, or the Federal National Mortgage Association.

. La.Civil Code art. 2924 (West Supp.1987) limits interest rates generally to twelve percent per annum. La.R.S. 9:3503 (West 1983) also limits to twelve percent per annum the amount of interest on an obligation secured by immovable property.

. La.R.S. 9:3519(A) provides:
A. The maximum loan finance charge for any consumer loan other than one made with a lender credit card that may be charged, contracted for or received by a licensed lender or supervised financial organization may equal but not exceed:
(a) Thirty-six percent per year for that portion of the unpaid principal amount of the loan not exceeding one thousand four hundred dollars;
(b) Twenty-seven percent per year for that portion of the unpaid principal amount of the loan exceeding one thousand four hundred dollars and not exceeding four thousand dollars;
(c) Twenty-four percent per year for that portion of the unpaid principal amount on the loan exceeding four thousand dollars and not exceeding seven thousand dollars; and
(d) Twenty-one percent per year for that portion of the unpaid principal amount of the loan exceeding seven thousand dollars.

. The district court granted plaintiff recovery of only the interest paid, but the court of appeal reversed.

. La.R.S. 9:3557 provides in pertinent part:
Unless a person is a supervised financial organization or has first obtained a license from the commissioner authorizing him to make supervised loans, he shall not engage in the business of (1) making supervised loans_ (emphasis supplied)

. As defined in La.R.S. 9:3516(28), a supervised loan is one "in which the rate of charge exceeds the rates provided in R.S. 9:3503 and R.S. 9:3505 as determined according to the provisions on finance charges for consumer loans” [essentially, in excess of 12%].

. La.R.S. 9:3501 (West 1983) provides:
Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.

. La.R.S. 9:3553 entitles a borrower to recover three times '⅛ amount of interest paid together with reasonable attorney’s fees from a lender who in bad faith violates the Louisiana Consumer Credit Law.

. See supra note 3.

. The record reflects that the defendant has entered into one other loan agreement in which the interest rate was greater than twelve percent.

. It is ultimately our conclusion that only licensed lenders and supervised financial organizations are contemplated by use of the words "the parties to a transaction" in this one section of a comprehensive statute governing consumer loan transactions.

. UCCC § 2.601 (1968) provides:
The parties to a sale other than a consumer credit sale may agree in a writing signed by the parties that the sale is subject to the provisions of this Act applying to consumer credit sales. If the parties so agree the sale is a consumer credit sale for the purposes of this Act.
Id. § 3.601 provides:
The parties to a loan other than a consumer loan may agree in a writing signed by the parties thr' the loan is subject to the provisions of this Act applying to consumer loans. If the parties so agree, the loan is a consumer loan for the purposes of this Act.

. Comment, Usury and Consumer Credit Law in Louisiana, 53 Tul.L.Rev. 1439, 1469 (1979) (citing U.C.C.C. § 2.601, comment).

. Note that even the comment to U.C.C.C. § 2.601 (See infra note 17 for text of comment), read out of context might be seen as ambiguous. *1077 When the comment says "if the creditor is willing to subject himself ..." one might read it to be referring to an unlicensed creditor. In fact, however, in context, the reference is to a licensed creditor.

. The comment to U.C.C.C. § 2.601 states:
The consumer purpose test is the basic standard for determining the coverage of this Act, but a purpose test can cause difficulties for a creditor in ascertaining the buyer’s purpose. Since the right to charge a given rate may depend on whether the purpose of the purchase is personal or business (Section 2.602), the creditor takes a risk whenever he makes a charge for credit. This section permits creditors, by inserting an appropriate clause in a sale contract, to be certain that the transaction is a consumer credit sale for the purposes of this Act. If the creditor is willing to subject himself to all the restrictions of the Act, there is no reason why he should not be able to make the same charges to any buyer as those he can make to one who buys for a consumer purpose.

. La.R.S. 9:3514 now reads as follows:
The parties to a transaction other than a consumer credit transaction, with the exception of retail installment transactions made pursuant to the Motor Vehicle Sales Finance Act, may contract with one another that such transaction shall be subject to the provisions of this Chapter, in which event the transaction shall be a consumer credit transaction within the provisions of this Chapter notwithstanding any other provisions of law to the contrary. However, unless a creditor is exempt from the licensing requirements of this Chapter under R.S. 9:3560, a creditor may not contract more than four transactions under the provisions of this Chapter over any calendar year without first complying with the licensing requirements under Part IX of this Chapter.